IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

RAUL CIRCUNS DEL CASTILLO,
AND GISELA RIVERA ALEMAN

   Debtors

CASE NO. 19-05907 (ESL)

CHAPTER 13

RAUL CIRCUNS DEL CASTILLO,
AND GISELA RIVERA ALEMAN

   Plaintiffs

vs.

BANCO POPULAR DE PUERTO
RICO; LUNA COMMERCIAL II, LLC;
JOHN DOE; XYZ CORPORATION

   Defendants

ADV. PROC. 21-00037

OPINION AND ORDER

On April 7, 2021, the Debtors/Plaintiffs initiated the instant action seeking an order from this Court for the determination, validity, priority, and extent of liens encumbering real property of the bankruptcy estate. The Plaintiffs request the Court to take judicial notice of the order entered on July 7, 2017, by the State Court, which is attached and identified as Exhibit 6, and thereupon enter order directing the Registrar of the Registry of Property, Guaynabo Part, to correct the rankings so that the mortgage lien related to promissory note of $270,000 be registered as having first rank over Plaintiffs' residence and that the mortgage lien related to promissory note in the amount of $77,000.00 be registered as having a second rank over Plaintiffs' residence. On May 12, 2022, Banco Popular de Puerto Rico (hereinafter referred to as "BPPR") filed a *Motion Requesting Entry of Order Re: Mandatory or Permissive Abstention* in which it contends that the Court should abstain and defer to the state court to interpret its own Order and Resolution pursuant to mandatory or permissible abstention and the Rooker-Feldman doctrine. (Docket No.

-1-

31). The Plaintiffs filed their *Opposition to Co-defendant Banco Popular de Puerto Rico's Motion for Entry of Order Filed at Docket 31* on June 12, 2022, arguing that the July 7, 2017, Order is clear in that it orders the Plaintiff BPPR (and subsequently Condado 3, LLC) to correct the ranks of the liens. (Docket No. 35).

For the reasons stated below, BPPR's *Motion Requesting Entry of Order Re: Mandatory or Permissive Abstention* is granted.

<u>Jurisdiction</u>

The Court has jurisdiction pursuant to 28 U.S.C. §§157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B) and (K). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

<u>Relevant Procedural Background</u>

The Debtors filed bankruptcy petition under Chapter 13 of the Bankruptcy Code on October 11, 2019. (Lead Case No. 19-05907, Docket No. 1). On October 24, 2019, the Debtors included in Schedule A/B: Property- their principal residence located at Urb. Quintas Reales P-3 Calle Reina Isabel, with a current value in the amount of $306,000.00 and 100% ownership interest. The Debtors included in Schedule D: Creditors Who Have Claims Secured by Property claimant Condado, with a claim in the amount of $570,651.74 of which $306,000.00 is secured by the Debtor's principal residence and an unsecured claim in the amount of $265,845.72. The Debtors also included BPPR as "another creditor" for the claim already listed in the amount of $570,651.74. (Lead Case No. 19-05907, Docket No. 10). On October 22, 2019, Condado filed proof of claim #1-1 as a secured mortgage creditor in the amount of $570,651.74. The value of the property in proof of claim #1-1 was left blank and the amount of the claim that is unsecured was also left blank. Condado disclosed that the amount necessary to cure any default as of the petition date was in the amount of $240,984.59. On June 9, 2022, a *Transfer of Claim Other than for Security* was filed informing that Condado transferred its claim #1 in the amount of $570,651.74 to Island Portfolio Services, LLC as servicer of Luna Commercial II, LLC (Lead Case, Docket No. 77). On November 12, 2019, BPPR filed proof of claim #5-1 for a secured

mortgage claim in the amount of $249,762.57. The value of the property in proof of claim #5-1 was left blank and the amount of the claim that is unsecured was also left blank. On September 25, 2020, BPPR filed amended proof of claim #5-2 for a secured mortgage claim in the amount of $253,466.72.

On November 13, 2019, the Debtor filed their chapter 13 plan dated November 12, 2019, which provides in section 3.1 that the Debtors will maintain the current contractual monthly installments on their mortgage with BPPR in which the collateral is their residence. Section 3.2 of the plan discloses that for the two mortgage claims in which Condado is the claimant, for the Court to determine the value of the secured claim and the portion of any allowed claim that exceeds the amount of the secured claim will be treated as an unsecured claim in Part 5. (Lead Case, Docket No. 17).

On May 18, 2020, the Debtors filed a *Motion Requesting Modification of Automatic Stay So That the Superior Court of Bayamon Can Rule on Issue of Ranking of Mortgage Liens* in which the Debtors request that the Court modify the automatic stay so that the state court may address Debtor's request for compliance with the July 7, 2017, Judgment. This motion was later withdrawn by the Debtors (Lead Case, Docket Nos. 31& 36), but the same explains that BPPR was the initial holder of both promissory notes, one in the amount of $77,000 which was the first ranking lien and the second promissory note in the amount of $270,000 which was the second ranking lien. The Debtors contend that at the closing of the second mortgage lien in the amount of $270,000 on April 17, 2004, Debtors agreed with BPPR that the $270,000 promissory note would be given first rank status and that the promissory note in the amount of $77,000 would be subordinated so that the mortgage lien in the amount of $270,000 would be afforded first rank status. Debtors signed all the required documents and paid for the deed of subordination. Refer to line 1112 of second page of closing statement which is identified as Exhibit 2. (Lead Case, Docket No. 31, Exhibit I, Exhibit II, pg. 2, line 1112). The Court notes that BPPR's proof of claim #5-1 which pertains to the second mortgage lien in the original amount of $270,000 includes the deed titled, "First Mortgage Deed" executed on April 17, 2004, between the Debtors and Popular

Mortgage, Inc. In the First Part of said deed, it states the following, "[t]hat Borrower is owner of the property described in paragraph FIFTH hereof (herein "Property") and has the right to mortgage said Property, that the Property is unencumbered." In the FIFTH part of The First Mortgage Deed, titled, "Property" includes the description of the Property and the four (4) mortgage liens that encumbered the same. The first mortgage lien was in the amount of $170,400 and the mortgage note holder was R.F. Mortgage and Investment Corporation. It also states that said mortgage lien would be cancelled by R&G Mortgage Corporation. The second mortgage lien that appears is in the amount of $25,000 and the mortgage note holder is BPPR. It also states that this mortgage lien will be cancelled by Popular Mortgage, Inc. The third mortgage lien that appears is in the amount of $60,000 and the mortgage note holder is BPPR. The First Mortgage Deed discloses that this mortgage lien will be cancelled by Popular Mortgage, Inc. The fourth mortgage that appears is in the amount of $77,000 and the mortgage note holder is BPPR. The First Mortgage Deed discloses that this mortgage lien will be subordinated in favor of the mortgage that is being constituted in this deed. (Lead Case; Claims Registry, proof of claim #5-1, pgs. 21 & 40). The Debtors explain that BPPR filed a foreclosure proceeding in the state court, case number DCD2013-2966 (402). As part of the proceedings in state court, BPPR alleged that the promissory note in the amount of $77,000 was the first ranking note encumbering Debtors' residence and that the mortgage in the amount of $270,000 had a second ranking status. This came as a surprise to the Debtors. Thereafter, the Debtors set forth the transaction history and requested from the state court to order BPPR to correct the rankings of the mortgage liens so that the promissory note in the amount of $270,000 have first rank and the note in the amount of $77,000 have second rank. The Debtors contend that the state court entered an Order on July 7, 2017, directing BPPR/Plaintiffs to correct the mortgage rankings. (Lead Case, Docket No. 31, Exhibit 3: State Court Order). Subsequently, BPPR sold the promissory note in the amount of $77,000 to Condado and kept the note in the amount of $270,000. Thereafter, Condado pursued foreclosure on its mortgage note. Debtors filed for bankruptcy protection to stay the foreclosure proceeding. The Debtors' plan proposes to cure and maintain the mortgage payments as to the $270,000

mortgage note since they have been paying this mortgage note under the assumption that this is the first ranking lien. The Debtors disclose that the plan proposes to cram down the mortgage note in the amount of $77,000. The Debtors also disclosed that they filed a complaint against the notary public which signed the mortgage deed for the promissory note in the amount of $270,000 and received payment for the subordination deed and subsequent inscription before the Property Registry. (Lead Case, Docket No. 31, Exhibit 4).

On October 24, 2020, the Debtors filed their amended Chapter 13 plan dated October 23, 2020, in which the Debtors in section 3.1 listed BPPR as the secured creditor that they will maintain the current contractual payments. In section 3.2 of the amended plan, the Debtors listed Condado as a creditor of two (2) mortgage liens; the first one is in the amount of $77,000 with a value of collateral (in the primary residence) in the amount of $306,000, of which $249,762.57 is the amount of claim senior to secured creditor's claim and the secured claim is in the amount of $56,237.43 with a 3.50% interest rate. The second mortgage lien is in the amount of $153,000 with a value of collateral (in the primary residence) in the amount of $306,000 of which $326,762.57 is the amount of claim senior to secured creditor's claim and the secure claim is in the amount of $0. (Lead Case, Docket No. 50). Consequently, the Debtors filed a *Motion Requesting Entry of Order* in which the Debtors requested the Court to enter an Order directing the Property Registrar to correct the inscriptions in its books so that the mortgage note in the amount of $270,000 have first ranking lien status over the Debtors' primary residence and the mortgage note in the amount of $77,000 have second ranking lien status in conformity with the July 7, 2017 state court Order that ordered Plaintiff Condado to correct the mortgage rankings (Lead Case, Docket No. 51).

On October 28, 2020, the Debtors filed a second amended chapter 13 plan dated October 28, 2020, in which the Debtors increased the base so that it would be sufficient to pay the claims (Lead Case, Docket No. 55). The Chapter 13 Trustee filed an unfavorable recommendation to the plan dated October 28, 2020, because the sufficiency of the plan cannot be determined until value of collateral treatment to creditor Condado is resolved (Lead Case, Docket No. 58). Creditor

Condado 3, LLC filed an objection to plan confirmation at docket #54. On November 16, 2020, the lead case was reassigned to Judge Enrique S. Lamoutte (Lead Case, Docket No. 64).

On December 2, 2020, Condado filed its *Opposition to Motion Requesting Entry of Order* in which it contends that: (i) the Debtors agreed that BPPR's mortgage lien in the amount of $270,000 would have the first ranking lien status. BPPR alleges that, "… the Notary hired by Banco Popular de Puerto Rico prepared a Subordination of Mortgage Deed #72 which was executed by Banco Popular de Puerto Rico on March 30, 2012. Said deed states that the rank of the Mortgage Note in the amount of $153,000.00 will be subordinated in favor of Mortgage Note in the amount of $270,000.00. Nowhere in the Subordination of Mortgage Deed #72 executed by Banco Popular de Puerto Rico was it requested to subordinate the $77,000.00 mortgage lien that was in first rank. (See attached Subordination of Mortgage Deed #72). As the appearing party of the Subordination of Mortgage Deed #72 it was Banco Popular de Puerto Rico's choice and will to only subordinate the $153,000.00 lien." Moreover, BPPR in the Subordination of Mortgage Deed #72 acknowledged that the mortgage in the amount of $77,000.00 had the first rank without requesting to subordinate said lien. Condado also argues that the Debtors "…failed to include the subsequent and applicable motion filed by Condado and the Order issued by the presiding state court judge in which the State Court denies the Debtors' motion requesting to alter the ranking of the $77,000.00 lien encumbering their property in Guaynabo, Puerto Rico and at the same time grants Condado's Motion in Compliance with Order." Condado further argues that BPPR had the opportunity to alter the rank of the liens encumbering the Debtors' residence through judicial intervention but without meeting the minimum statutory requirements. Condado contends that there was no error or mistake as to the ranking of the liens encumbering the Debtors' primary residence.  (Lead Case, Docket No. 68).

On March 24, 2021, a confirmation hearing was held in which the Court denied the Debtors' motion requesting order without prejudice to filing an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(2). The hearing on confirmation was continued without a date, pending a determination of lien priorities related to proof of claim #5 filed by Condado. (Docket No. 51)

(Lead Case, Docket No. 71).  The Court notes that there has been no request from any party for an appraisal of the real estate property that is the Debtors' primary residence.

On April 7, 2021, the Debtors filed the instant complaint against Condado and BPPR for declaratory judgment; injunctive relief and to determine the validity, priority and extent of liens encumbering real property of the bankruptcy estate. The Debtors request that the Court takes judicial notice of the July 7, 2017, state court order in the case DCD2013-2966 (402), in which the Plaintiff (BPPR) was ordered to correct the ranking of the mortgage liens and ordered the Property Registrar, Guaynabo Part, to correct the rankings. The order was not appealed and, thus, is final and binding. In subsequent state court proceedings, the state court did not address the previous Order directing the correction of rankings and continued with the foreclosure proceedings. (Docket No. 1). On May 4, 2021, Condado filed its *Answer to Complaint* (Docket No. 7). On June 4, 2021, BPPR filed its *Answer to the Complaint* (Docket No. 13). On August 9, 2021, Condado filed its *Amended Answer to Complaint* (Docket No. 14). On August 20, 2021, a status conference was held in which the Court granted the parties ninety (90) days to conclude discovery and one-hundred twenty (120) days to file dispositive motions. The parties were granted sixty (60) days to file a settlement agreement or inform the court on the status of negotiations. The pretrial hearing was continued without a date. (Docket No. 18).

Thereafter, on May 12, 2022, BPPR filed a *Motion Requesting Entry of Order Re: Mandatory or Permissive Abstention.* (Docket No. 31). On June 12, 2022, the Plaintiffs filed their *Opposition to Co-Defendant Banco Popular de Puerto Rico's Motion for Entry of Order Filed at Docket No. 31* (Docket No. 35).

On June 17, 2022, a status conference was held in which the parties were granted thirty (30) days to file a settlement agreement and the pretrial hearings was continued without a date. Plaintiff was granted fourteen (14) days to add Island Portfolio Services LLC, (hereinafter referred to as "Island Portfolio"), servicer of Luna Commercial II, LLC, as defendant since Condado had transferred the claim. If no agreement is filed, then the motion for abstention would be deemed submitted. (Docket No. 36).

On July 1, 2022, the Debtors/Plaintiffs filed their *Amended Complaint* to include Luna Commercial as a defendant. (Docket No. 41). On August 1, 2022, Island Portfolio as servicer for Luna Commercial filed a *Motion for Extension of Time to File Answer to Amended Complaint or Otherwise Plead* and the same was granted on August 2, 2022. (Docket Nos. 42 & 43). On August 29, 2022, Island Portfolio, as servicer for Luna Commercial, filed a second *Motion for Extension of Time to File Answer to Amended Complaint or Otherwise Plead* and the same was granted on August 30, 2022. (Docket Nos. 45 & 47). On August 30, 2022, BPPR filed its *Answer to the Amended Complaint* (Docket No. 46).

Uncontested Relevant Facts

1. On February 21, 2001, BPPR granted a commercial loan to the Debtors ("Credit Facility 1). As part of Credit Facility 1, BPPR received from the Debtors a mortgage note in the principal amount of $77,000.00, due on demand, bearing interest at prime rate as published in the Wall Street Journal ("Note 1"). Note 1 was subsequently modified on March 13, 2009, to fix the interest rate at 10%. Note 1 was secured by a mortgage that encumbers Debtors' residence at Urb. Quintas Reales, in Guaynabo, Puerto Rico.

2. On May 14, 2007, Westernbank Puerto Rico, Inc. ("Westernbank") granted RRC Administration Services, Inc. a commercial loan in the amount of $490,000.00 ("Credit Facility 2) to: (i) cancel loans of corporations affiliated with Debtor Raul A. Circuns del Castillo; Ragial, Inc., and Raen Corporation; (ii) to pay personal debt with MediCoop; and (iii) for working capital. Debtors and the named corporations in which they had a controlling interest granted Westernbank cross-guarantees.

3. BPPR acquired from Westernbank Credit Facility 2 on April 30, 2010, in a transaction assisted by the Federal Deposit Insurance Corporation ("FDIC").

4. On April 17, 2004, BPPR granted Debtors a residential mortgage loan evinced by a note payable to the order of BPPR in the principal amount of $270,000.00 bearing interest at the annual rate of 5.875% and due on May 1, 2034 ("Note 2"). As part of the transaction BPPR agreed to subordinate the rank of Note 1 in order for Note 2 to become the first mortgage and Note 1 to

become the second mortgage. At the time of the subordination agreement, BPPR was the holder in due course of both Notes 1 and 2. Note 2 also encumbers the subject property. The subordination agreement was not executed or presented at the Property Registry.

5. On April 11, 2013, BPPR and the Debtors, in their personal character and as authorized representatives of previously named corporations in which they had a controlling interest agreed to a work-out of Credit Facility 1 and Credit Facility 2 and executed an agreement that included a deferred payment plan and the entry of a judgment by consent, in the event of a default in the deferred payment plan.

6. Between April 11, 2013, and October 10, 2013, BPPR sold and transferred to Condado, Credit Facility 1 and Credit Facility 2. The acquisition included the sale and transfer of Note 1 secured by a commercial mortgage that encumbers the subject property but did not include the sale and transfer of Note 2 secured by a residential mortgage that also encumbers the subject property.

7. Debtors defaulted in the deferred payment plan and on October 10, 2013, Condado filed a lawsuit in the state court that dealt with the enforcement of the consent judgment ("sentencia por confesión") signed by the Debtors, both in their personal character and as the authorized representatives of previously named corporations in which they had a controlling interest.

8. As part of the enforcement of the consent judgment, Condado moved the Court for the foreclosure and public sale of the real properties that served as collateral to Credit Facility 1 and Credit Facility 2, including, but not limited to, the subject property in which Condado is the holder of Note 1 and BPPR is the holder of Note 2. (Docket No. 31).

Position of the Parties

Defendant BPPR

On July 7, 2017, a state court Judgment was entered that ordered Plaintiff Condado to "correct the priority order of the mortgages." (Docket No. 31, Exhibit A). The state court case was reassigned. Subsequently, on June 4, 2019, the state court in a Resolution denied a motion

filed by Defendant RRC Administration Services, LLC to stay foreclosure proceedings. (Docket No. 31, Exhibit B, Lead Case, Docket No. 68, pg. 20, Docket No. 31, Exhibit B). The court notes that the Debtors did not file for bankruptcy protection until October 11, 2019.

BPPR argues that the July 7, 2017, Judgment and the June 4, 2019, Resolution that were rendered in the state court case resulted in "… the entry of what seems two contradictory interlocutory orders dealing with the rank in the Property Registry of two mortgages, one of the mortgages held by Condado and the other mortgage held by BPPR. One of the two orders favors Plaintiffs' legal theory, meaning that Condado has to subordinate the rank of its mortgage in favor of BPPR and the second order favors by inaction Condado's legal theory." (Docket No. 31, pg. 2).

BPPR contends that this Court should abstain and defer to the local court to interpret its Order and Resolution based on the Rooker-Feldman doctrine and under mandatory or permissible abstention. BPPR argues that all the requirements pursuant to 28 U.S.C. §1334(c)(2) for mandatory abstention are satisfied.  28 U.S.C. §1334(c)(2) states that, "[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."  BPPR also argues that permissive abstention under 28 U.S.C. §1334(c)(1) is warranted because as alleged by Debtors/Plaintiffs this is a core proceeding and state law is determinative of the rights of the parties in a subordination agreement and the rank of the mortgages affected by the subordination agreement. Lastly, BPPR argues that the Rooker-Feldman doctrine is applicable because the Bankruptcy Court should defer to the state court to interpret the "…seemingly contradictory Judgment and Resolution."

Plaintiffs/Debtors

The Plaintiffs argue that there is no ambiguity as to the state court order dated July 17, 2017, given that the same is clear in which it orders Plaintiff Condado to correct the ranks of the

liens. There is no ambiguity in the Order and thus, no further clarification is needed to understand its meaning. The Plaintiffs agree that after the case was reassigned, the new judge denied a motion to stay the foreclosure being sought over Plaintiffs' residence. The Plaintiffs argue that this does not change the main operating facts of the complaint and an abstention in the case would not serve the interests of justice. Moreover, upon the filing of the Debtors' bankruptcy petition, the foreclosure of real property and collection of monies proceeding was stayed. Thus, the order granting the execution of Judgment was stayed pursuant to 11 U.S.C. §362. The Plaintiffs argue that the automatic stay entered in the bankruptcy case does not operate as a stay for the remedy being sought in the complaint, that is, the correction of the rankings of liens over Plaintiffs' primary residence. Plaintiffs contend that there is no controversy that the state court Order is a lawful Order of which the Bankruptcy Court can take judicial notice and grant the applicable remedy. Moreover, this adversary proceeding was filed in support of the payment plan proposed by Plaintiffs in the lead bankruptcy case. The Debtors contend that the payment plan filed in the main bankruptcy case cannot be confirmed until the matter set forth in the complaint is resolved. (Docket No. 35).

Issue

The issue before the Court is whether this Court should abstain and defer to the state court to interpret its Order and Resolution based upon mandatory or permissive abstention pursuant to 28 U.S.C. §1334(c)(1) and (2) and the Rooker-Feldman doctrine. After a review of the docket, the Court notes that subsequent to the June 4, 2019, Resolution that was rendered by the state court, there was a *Motion of Compliance with Order Notified on July 3, 2019,* filed by Condado in the state court case on July 10, 2019. In this motion, Condado states that the state court on July 3, 2019, rendered an Order granting Condado fifteen (15) days to reply to the *Motion of Reconsideration* as to the June 4, 2019, Resolution filed by the defendant regarding the need to correct the rankings of the mortgages. Condado in said *Motion in Compliance with Order* requests the state court to deny the defendant's motion for reconsideration. (Lead Case, Docket No. 68,

pgs. 5-7). The parties have not informed the Court whether the state court has adjudicated these motions prior to the Debtors filing for bankruptcy protection on October 11, 2019.

<u>Applicable Law & Analysis</u>

The federal courts have jurisdiction over bankruptcy case pursuant to 28 U.S.C. §1334, which provides in subsection (a) that the district courts have original and exclusive jurisdiction over "cases under title 11" and in subsection (b) that the district court have original but not exclusive jurisdiction over proceedings arising in or related to cases under title 11."

28 U.S.C. §1334 provides in pertinent part:

"(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11. ----

(c)(1) Except with respect to a case under chapter 15 of this title, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(c)(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. §1334 (c)(1) and (2).

Section 1334(c) provides for permissive abstention under §1334(c)(1) and mandatory abstention under §1334(c)(2). Section 1334(c)(1) gives the district court the power to abstain from core matters as well as related to matters. However, mandatory abstention under section 1334(c)(2) is more limited and only applies to proceedings based upon state law claims or causes of action "related to" a case under title 11 but not "arising under" or "arising in" a case under title 11. Richard Levin & Henry J. Sommer, 1 <u>Collier on Bankruptcy</u>, ¶3.05[1] (16th ed. 2022).

This Court in <u>Carmona v. Osnet Wireless Corp</u>., discussed the different civil proceedings included in section 1334(c) and stated as follows:

-12-

"[t]he statute distinguishes between cases 'arising under', 'arising in' and 'related to' proceedings under title 11. Arising under' proceedings are those cases in which the cause of action is created by title 11.' New Eng. Power and Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 68 (1st Cir. 2002). 'Arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Id. (citation omitted). 'Related to' proceedings are those which potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankruptcy estate." Id. (citations omitted).

Proceedings which 'arise in' and 'arise under' title 11 together constitute the bankruptcy court's 'core' jurisdiction. 28 U.S.C. § 157(b)(1); Concerto Software, Inc. v. Vitaquest International, Inc., 290 B.R. 448, 452 (D. Maine 2003). The mandatory abstention provision of §1334(c)(2) applies to cases 'related to' proceedings under title 11, and provides that the district court should abstain from hearing a proceeding based upon a state law claim or state law cause of action, which is related to a case under title 11 but not arising under or arising in a case under title 11, if a state court action is pending and can be timely adjudicated. See Middlesex, 292 F.3d at 68, fn. 6.

Carmona v. Osnet Wireless Corp., 2020 Bankr. LEXIS 662, *18-19 (Bankr. D.P.R. 2020).

As to proceedings "arising in" cases under title 11, this Court in Diaz Irizarry v. Diaz Irizarry (In re Betteroads Asphalt, LLC) discussed this category of proceedings more in depth and stated the following:

"Proceedings 'arising in' cases under title 11 are 'those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.' In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68; see also; Gupta v. Quincy Med. Ctr., 858 F. 3d at 663 (citing Stoe v. Flaherty, 436 F. 3d at 218 ('[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case.'); Continental Nat'l Bank v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 (11th Cir. 1999) (stating that proceedings 'arising in' bankruptcy are 'matters that could arise only in bankruptcy')). 'There is no 'but for' test for arising in jurisdiction; that is, the fact that a matter would not have arisen had there not been a bankruptcy case does not *ipso facto* mean that the proceeding qualifies as an 'arising in" proceeding. Id. at ¶3.01[3][e][iv].

'Arising in' acts as the residual category of civil proceedings, and includes such things as administrative matters, "orders to turn over property of the estate" and "determinations of the validity, extent, or priority of liens.'"

Irizarry v. Irizarry (In re Betteroads Asphalt, LLC), 2021 Bankr. LEXIS 3081, at *36-37 (Bankr. D.P.R. 2021).

Section 1334(c)(1) is not mandatory, it gives the bankruptcy court, the discretion to abstain guided by three criteria; namely if abstention is "in the interest of justice, comity, and respect for state law." In re Middlesex Power Equip. & Marine, Inc., 292 F. 3d 61 (1st Cir. 2001) citing In re Pan Am. Corp., 950 F. 2d 839, 845 (2nd Cir. 1991). See also Acevedo v. Bayron (In re Acevedo), 546 B.R. 496. 504 (Bankr. D. Mass. 2016).

This Court in LSREF2 Island Holdings Ltd. v. Jimenez Marrero (In re Jimenez Marrero), 2018 Bankr. LEXIS 3373, *10-13 (Bankr. D.P.R. 2018) discussed the applicable law as to discretionary abstention and stated the following:

> "'Discretionary abstention applies to both core and non-core proceedings.' Ford v. Clement (In re Beckmeyer), 1999 Bankr. LEXIS 1879, *5, 1999 WL 33457767, *2 (Bankr. D. N.H. 1999). The issue of discretionary abstention may be raised by a court *sua sponte*. Id. at *12. 'There is no clear standard or test that governs when a court should exercise its discretion to abstain from hearing a proceeding. Id., referencing In re DiMartino, 144 B.R. 225, 226 (Bankr. D.R.I. 1992) ('discretionary abstention is difficult to concretize into bright-line tests or specific balancing tests')". There are various elements to take into consideration upon deciding whether or not to abstain pursuant to §1334(c)(1), one of them being the existence of state law claims in relation to bankruptcy law claims. Mec Steel Bldgs v. San Lorenzo Constr. Corp. (In Re Mec Steel Bldgs.), 136 B.R. 606, 611 (1992). However, '[t]he statute itself delineates 'three . . . criteria to determine whether abstention is appropriate": the interests of justice, comity, and respect for state law. New Eng. Power and Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 69-70 (1st Cir. 2002), referencing In re Pan Am. Corp., 950 F.2d at 845. 'Other circuits have considered several factors in the determination of whether permissive abstention is appropriate, including: 'the extent to which state law issues predominate over bankruptcy issues'; 'the presence of a related proceeding commenced in state court or other nonbankruptcy court'; and 'the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.' Id. See also CH Props. v. Comite de Vecinos de Isla Verde (In re CH Props.), 381 B.R. 20 (Bankr. D.P.R. 2007).

> Additionally, the courts may consider the following factors: '(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled

nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, and (12) the presence in the proceeding of nondebtor parties.'" Flores Rivera v. Telemundo Group, 133 B.R. 674, 677 (D.P.R. 1991).

LSREF2 Island Holdings Ltd. v. Jimenez Marrero (In re Jimenez Marrero), No. 17-00262 (ESL), 2018 Bankr. LEXIS 3373, at *11-13 (Bankr. D.P.R. Nov. 2, 2018).

In the instant adversary proceeding, both parties agree that this is a core proceeding. The Court finds that this is a core proceeding "arising in" a case under title 11 because it pertains to the determination as to the validity, extent, or priority of a lien. This determination as to the ranking of the BPPR lien directly affects whether the debtors may bifurcate the junior mortgage which directly affects the feasibility of the plan. Therefore, discretionary abstention pursuant to section 1334(c)(1) is the applicable statute. The Court will consider discretionary abstention in this adversary proceeding because this civil proceeding regarding the foreclosure action and lien ranking controversy has been before the state court since the year 2013. The state court has rendered a Judgment on July 7, 2017, ordering Condado to correct the priority of the mortgages and subsequently on June 4, 2019, the state court denied a motion to stay the foreclosure proceedings. Moreover, pursuant to the state court motions and documents filed in the lead case, there is a pending motion for reconsideration and a Motion in Compliance with Order filed by Condado requesting the state court to deny the defendant's motion for reconsideration as to the June 4, 2019, Resolution regarding the need to correct the rankings of the mortgages.

As previously discussed, the legal issue addressed by the Debtors/Plaintiffs in the adversary proceeding as to the ranking of the mortgage liens is a legal controversy that has already been addressed and adjudicated by the state court pre-petition and there is a pending motion for

reconsideration regarding the same. The court concludes that in the interest of justice, comity and respect for state law analysis it shall exercise its discretionary power under 28 U.S.C. §1334(c)(1) to abstain from deciding a legal controversy that has already been decided by the state court and in which there is a pending motion for reconsideration regarding the legal issue as to the mortgage rankings.

The Court also finds that given that the state court has rendered pre-petition a Judgment and a Resolution which pertains to the mortgage ranking controversy and there is a pending motion for reconsideration, the Rooker-Feldman doctrine, which "applies to 'cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments,'" may divest this Court of jurisdiction. See DuLaurence v. Telegen, 94 F. Supp. 3d 73, 79 (D. Mass. 2015) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)).

### Conclusion

For all of the foregoing reasons, the Court grants BPPR's *Motion Requesting Entry of Order Re: Mandatory or Permissive Abstention*.

Judgment will be entered dismissing the instant adversary proceeding as the court abstains in the interest of comity to allow the Puerto Rico courts to decide the issues raised in the complaint before this court.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September 2022.

Enrique S. Lamoutte
United States Bankruptcy Judge